IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASHLEY SHEFFIELD,<br>on behalf of herself and all persons similarly situated,<br><br>                Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF VETERANS AFFAIRS, DENIS MCDONOUGH, in his official capacity as United States Secretary of Veterans Affairs, and IVAN E. CORREA, individually and in his capacity as acting Chief of Staff for Edward P. Boland VA Medical Center,<br><br>                Defendants. | Civil Case No. 23-11757<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

**PRELIMINARY STATEMENT**

Since the founding of our nation, members of the lesbian, gay, bisexual, transgender, queer, and other sexual minority (LGBTQ+) community have honorably served in our military. Yet for over two hundred years, those same service members and veterans have experienced both official and unofficial discrimination because of who they are and who they love. As far back as the American Revolution, homosexual activity meant discharge from the armed forces. In 1982, the military enacted an explicit ban on gay men and lesbians from serving. The 1990s brought both the "Don't Ask, Don't Tell" policy, which prohibited LGBTQ+ service members from serving openly in the military, and the Defense of Marriage Act (DOMA), which defined marriage under federal law solely as the legal union between one man and one woman as husband and wife.

Only recently has our nation begun, haltingly, to correct these injustices. In 2003, Massachusetts became the first state to recognize same-sex marriages. In 2011, the Don't Ask, Don't Tell policy was repealed. In 2013, the United States Supreme Court struck down DOMA's

1

discriminatory definition of marriage as unconstitutional, and two years later, the Court held that state bans on same-sex marriage are also unconstitutional, making same-sex marriage legal in all fifty states. Transgender service members were officially allowed to serve openly in the military only in 2015, but then were subject to a ban under the Trump Administration, which was then repealed by President Biden in 2021. Finally, in December 2022, Congress passed the bipartisan Respect for Marriage Act, which formally repealed DOMA and guaranteed that the marriages of opposite-sex and same-sex couples will be treated equally under federal law. When President Biden signed the Respect for Marriage Act, he explained that "For most of our nation's history, we denied interracial couples and same-sex couples from these protections. We failed. We failed to treat them with an equal dignity and respect. And now, the law requires that interracial marriages and same-sex marriage must be recognized as legal in every state in the nation."

Notwithstanding this profound change in the law in recent years, the long history of officially sanctioned bigotry towards the LGBTQ+ military and veteran community persists today, not only in individuals' biases but also in the vestiges of unconstitutional, discriminatory laws and policies that remain on the books.

One such law prohibits disabled veterans in same-sex marriages from receiving the same fertility care as other veterans in opposite-sex marriages.[1] This patently discriminatory law barred Plaintiff Ashley Sheffield from obtaining in vitro fertilization (IVF) from the Department of Veterans Affairs (VA) because she is married to another woman—10 years after the Supreme Court struck down DOMA. Why? Because a federal appropriations statute for VA medical care refers to a 2012 Department of Defense memorandum that limited IVF services to service members

---

[1] For the purposes of this Complaint, the term "opposite-sex marriage(s)" refers to cisgender opposite-sex marriages or marriages in which the two married individuals have opposite-sex gametes/reproductive organs. This is because the VA policy, by its own terms, would provide IVF to an otherwise-eligible veteran and spouse as long as they have opposite-sex gametes/reproductive organs.

in heterosexual marriages, based on DOMA's unconstitutional definition of marriage. By enforcing these outdated, discriminatory, and unconstitutional requirements for veterans to receive government benefits, the government is breathing new life into discriminatory relics of a legal landscape that the Supreme Court of the United States has thoroughly rebuffed.

LGBTQ+ veterans like Ashley Sheffield who have bravely sacrificed for our country deserve equal treatment when they seek the medical benefits they have earned. In 2023, it should go without saying that LGBTQ+ veterans are entitled to equal treatment under the law. VA must end its blatant and willful discrimination of veterans in same-sex marriages and provide Ms. Sheffield, and all other veterans denied IVF because of sex and sexual orientation, the health care they have earned.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 because the matter in controversy arises under laws of the United States and the United States Constitution. Plaintiff Ashley Sheffield challenges the facial constitutionality of a federal statute and policy and seeks damages under 42 U.S.C. § 18116(a) and other applicable law. She does not seek review of any decisions of the Secretary of VA related to benefits. Therefore, this action is not barred by 38 U.S.C. § 511(a).

2. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1). Ms. Sheffield lives in Massachusetts, and a substantial part of the events that gave rise to the Plaintiff's claims took place within the District.

3. This Court has the authority to enter declaratory judgment and to provide preliminary and permanent injunctive relief in accordance with Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4.      Plaintiff Ashley Sheffield is a decorated veteran who honorably served in the United States Air Force for nearly 20 years. She is a resident of Massachusetts. In addition to bringing this civil action individually, Plaintiff brings this as a class action on behalf of all persons similarly situated, who are veterans in same-sex marriages who have been denied IVF by VA.

5.      Defendant Denis McDonough is the United States Secretary of Veterans Affairs and the top official of the Department of Veterans Affairs, which has its headquarters located at 810 Vermont Avenue, NW, Washington, DC 20420.

6.      Defendant Department of Veterans Affairs is a department of the executive branch of the United States government, and its headquarters is located at 810 Vermont Avenue, NW, Washington, DC, 20420.

7.      Defendant Ivan E. Correa is the current Chief of Staff for the VA Central Western Massachusetts Health Care System (VACWM), which is part of the VA New England Healthcare System, known as Veterans Integrated Services Network 1 (VISN1). VISN1 is headquartered in Eastern Massachusetts, in Middlesex County, at 200 Springs Road, Bedford, MA 01730. Dr. Correa was Acting Chief of Staff for VACWM in July 2022 when he sent Ms. Sheffield a letter denying her IVF services because she is married to another woman.

## STATEMENT OF FACTS

**I.      Legal Framework**

8.      Section 234 of the Military Construction, Veterans Affairs, and Related Agencies Appropriations Act of 2021 (2021 Appropriations Act) gave VA the authority to provide in-vitro fertilization (IVF) services to veterans. The 2022 Appropriations Act is, in pertinent part, identical.

9. Section 234 of the 2021 Appropriations Act authorizes, specifically, "fertility counseling and treatment using assisted reproductive technology to a covered veteran or the spouse of a covered veteran."

10. A "covered veteran" under Section 234 is a veteran with "a service-connected disability that results in the inability of the veteran to procreate without the use of fertility treatment."

11. "Assisted reproductive technology" under Section 234 means "benefits relating to reproductive assistance provided to a member of the Armed Forces who incurs a serious injury or illness on active duty . . . as described in the memorandum on the subject of 'Policy for Assisted Reproductive Services for the Benefit of Seriously or Severely Ill/Injured (Category II or III) Active Duty Service Members' issued by the Assistant Secretary of Defense for Health Affairs on April 3, 2012 ["2012 Memo"], and the guidance to implement such policy, including any limitations on the amount of such benefits available," except that the time periods regarding embryo cryopreservation do not apply.

12. Assisted reproductive technology includes IVF. IVF is a process of fertilization where an egg is combined with sperm *in vitro*, *i.e.*, in a culture medium in a laboratory. The process involves monitoring and stimulating a person's ovulatory process, then retrieving one or more eggs from her ovaries and fertilizing them with sperm in a culture medium in a laboratory. One or more fertilized embryos are then transferred to a uterus.

13. One of the limitations referred to by Section 234, which is included in the 2012 Memo, is that benefits are "limited to permitting a qualified members to procreate with his or her lawful spouse, as defined in federal statu[t]e and regulation." *See* Exhibit 1.

14. In 2012, under DOMA, cisgender same-sex couples were not "lawful spouses." Thus, they were not entitled to IVF services under the 2012 Memo, or, in turn, under the 2021 Appropriations Act.

15. VHA Directive 1334 implements Section 234, defining VA's "policy for ensuring access to in vitro fertilization (IVF) services for Veterans who are unable to procreate as a result of their service-connected condition." The directive requires that a veteran meet several criteria to be eligible for IVF services: (1) the veteran must have a service-connected condition that results in the inability to procreate without the use of fertility treatment; (2) the veteran must, if female, have an intact uterus and either be able to make eggs or have had their own eggs cryopreserved or, if male, be able to make sperm or have had his own sperm cryopreserved; and (3) the veteran and their spouse must be a cisgender opposite-sex legally married couple, or other legally married couple with opposite-sex gametes/reproductive organs.

16. Under the 2021 and 2022 Appropriations Acts and VHA Directive 1334, cisgender same-sex spouses are barred from eligibility for IVF even if they meet all other criteria to qualify for such services. In other words, cisgender same-sex couples are not entitled to VA health care on the same basis as cisgender opposite-sex couples. These laws and policy continue to implement the Defense of Marriage Act's discriminatory definition of marriage more than a decade after the U.S. Supreme Court held DOMA unconstitutional in *United States v. Windsor*, 570 U.S. 744 70 (2013).

17. Congress and Defendant VA continue to deny same-sex couples the opportunity to start families of their own, solely because of sex and their sexual orientation.

18. The discriminatory law deprives same-sex couples of the dignity and equality to which they and their marriages are entitled under the United States Constitution.

## II.   Ms. Sheffield Was Unconstitutionally Denied Access to IVF Health Care Because She Is Married to a Woman.

19.   Ms. Sheffield served honorably in the United States Air Force for nearly 20 years. Her numerous commendations include but are not limited to: the Air Force Achievement Medal, Meritorious Unit Award, Air Force Outstanding Unit Award, Air Force Good Conduct Medal, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global War on Terrorism Service Medal, Air Force Expeditionary Service Ribbon, Air Force Longevity Service Ribbon, Armed Force Reserve Medal, Operation Noble Eagle 2005-2007, Operation Noble Eagle 2011-2021, and OEF Support 2012. She medically retired from the Air Force in August 2021 at the age of 38.

20.   In 2021, Ms. Sheffield married her wife. They live in Massachusetts and hope to conceive a child of their own and share their passion for serving others with that child.

21.   During her military service, Ms. Sheffield was often exposed to jet fuel. Jet fuel contains known carcinogens, as well as organic compounds that can affect the human reproductive system. She was also exposed to high levels of polyfluoroalkyl and perfluoroalkyl substances, or PFAS, which are also linked to infertility.

22.   As a result of her service, Ms. Sheffield incurred several physical and mental health conditions. VA has recognized those conditions as service-connected and provided her a 100% Permanent and Total disability rating. Ms. Sheffield also receives special monthly compensation for loss of a creative or reproductive organ. As relevant here, VA determined that Ms. Sheffield was entitled to a 10% rating for service-connected "disease, injury or adhesions of ovary," which means that her symptoms require continuous treatment. 38 C.F.R. § 4.116.

23.   Ovarian adhesions or other disease or injury can result in both pain and infertility.

24. Ms. Sheffield also receives special monthly compensation from VA for loss of use of a creative (*i.e.*, reproductive) organ, under 38 U.S.C. § 1114(k). Beginning before her retirement, Ms. Sheffield sought fertility services through the military, using intrauterine insemination (IUI) with donor sperm to try to conceive a child.

25. Most infertility doctors recommend that patients attempt three or four cycles of IUI before considering IVF; in limited circumstances, a doctor may recommend up to six cycles of IUI. This is, in part, because the vast majority—approximately 95%—of successful IUIs occur within four cycles.

26. In all, Ms. Sheffield went through eight IUI cycles without successfully carrying a pregnancy to term.

27. After separating from the military, Ms. Sheffield promptly sought fertility treatment from VA through her local VA Medical Center operated by the Veterans Health Administration (VHA). Ms. Sheffield requested a referral for IVF services. VHA generally requires veterans and their spouses seeking IVF to obtain authorization and a referral to a non-VA infertility specialist, as part of VA's "community care" program. VA then reimburses the cost of the IVF.

28. In addition to her service-connected ovarian condition, Ms. Sheffield's ability to get pregnant was affected by her age. Fertility in women begins to rapidly decline in their late 30s, reducing the chance of achieving pregnancy even through assisted reproductive technology like IVF. For women under 35, the live birth rate after three IVF cycles is over 60%; for women over 40, the rate is below 25%, reaching near zero by age 44. For the purposes of medical treatment, infertility is generally defined as the inability to become pregnant after one year of unprotected sex for women under 35, and six months for women 35 and older.

29. Ms. Sheffield's VHA physician attempted to refer her for IVF services. VA, however, denied Ms. Sheffield's request for IVF. When Ms. Sheffield asked why she did not qualify for IVF, she was informed in writing by both the local Women Veterans Program Manager and her physician's office that it is because she is in a same-sex marriage.

30. The local Women Veterans Program Manager specifically informed Ms. Sheffield on August 18, 2021, in writing, "You are not qualified if your [sic] in a same sex marriage or if the sperm is donated from someone other than a male spouse. I am sorry."

31. On November 4, 2021, Ms. Sheffield's physician's office wrote:

> I have been in contact with this veteran several times. I have told her that she can not [sic] receive IVF from the VA because Veterans in the same sex marriage [sic] do not qualify. I explained that the policy is a national policy and gave her information to contact her congress representatives.

32. Ms. Sheffield wanted VA to change its policy and allow her and other veterans in same-sex marriages to obtain IVF services. However, when VHA denied her request in November 2021, she was already 38. If Ms. Sheffield had waited for VA to change its policy, that delay would have decreased her chances of conceiving through IVF or eliminated it completely. Accordingly, Ms. Sheffield was compelled to incur the considerable expense of private infertility treatment. Ms. Sheffield has also endured ongoing emotional distress due to the discriminatory actions of Defendants.

33. Undeterred, Ms. Sheffield continued to try to get VA to provide her with coverage for IVF. On April 8, 2022, Ms. Sheffield requested, through counsel, that VA cease its unconstitutional discrimination against her and her wife.

34. In a letter dated July 14, 2022, Ivan E. Correa, then Acting Chief of Staff for the VA Central Western Massachusetts Health Care System (VACWM), continued to apply VHA's unconstitutional policy and told Ms. Sheffield that she does not meet the eligibility criteria for VA

to authorize fertility services because "neither [her] nor [her] spouse have testicular tissue from which sperm can be retrieved or autologous cryopreserved sperm available." *See* Exhibit 2.

35.  In other words, the government decided that Ms. Sheffield does not qualify for fertility services, including IVF, because she is a cisgender woman married to a cisgender woman. This decision and policy are inexplicable and unconscionable a decade after the Supreme Court held that the federal government cannot deny equal treatment to people in same-sex marriages.

## CLASS ALLEGATIONS

36.  Plaintiff Sheffield brings this action as a proposed class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class:

> All veterans who have been denied the opportunity to obtain IVF services by VA or who have been denied reimbursement for services from private providers by VA because the veteran is in a same-sex marriage.

37.  Plaintiff reserves the right to amend the class definition or establish subclasses as appropriate if discovery or further investigation reveals the class should be expanded or otherwise modified.

38.  The proposed Class satisfies all of the requirements of Rule 23(a).

39.  Numerosity: The class is so numerous that joinder is impracticable. VA has identified an estimated 1 million gay and lesbian American Veterans (approximately 2.8% of all Veterans).[2] The percentage of those veterans who are otherwise eligible for IVF under the VHA's policies and who would like to have children is unknown. However, on information and belief, that number is

---

[2] *Veterans with Lesbian, Gay, Bisexual and Queer Identities*, VA Community Provider Toolkit. (n.d.). https://www.mentalhealth.va.gov/communityproviders/veterans-lgb.asp#sub-section0

at least dozens of veterans and likely to be hundreds of veterans. Joinder is also impracticable because the class includes unnamed and future class members, who cannot be counted and joined.

40. Commonality: The claims of the class share common issues of fact and law, including but not limited to

   a. Whether the members of the Class were denied the opportunity to obtain IVF services by VA or reimbursement for private services by VA because they were in same-sex marriages;

   b. Whether the provisions of the 2021 Appropriations Act and VHA Directive 1334 excluding cisgender same-sex married couples from eligibility for IVF services violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

   c. What declaratory and injunctive relief are warranted regarding the Defendants' conduct; and What damages are warranted.

41. Typicality: The claims of Plaintiff are typical of those of the class as a whole because Plaintiff has been denied IVF subject to the same policies as the proposed class members, the claims of Ms. Sheffield arise from the same pattern or practice or course of conduct that forms the basis of the Class Members' claims, and Ms. Sheffield brings the same legal claims based on the same legal theory as the Class Members.

42. Adequacy: Plaintiff is an adequate class representative who meets all the requirements of Rule 23(a)(4). She has no conflicts in this case with other class members. She will fairly and adequately represent the interests of the class and understands the responsibilities of a class representative. In fact, by advocating for the government to end its discrimination against veterans in same-sex marriages, Ms. Sheffield has already demonstrated that she will be a zealous

representative of the Class. In addition, she has retained counsel who have extensive experience with the factual and legal issues involved in representing the LGBTQ+ community and veterans in asserting constitutional rights and/or in pursuing class actions. Counsel will vigorously pursue the interests of the class.

**Rule 23(b)(3) certification is appropriate.**

43. Class certification is appropriate for the proposed Class under Rule 23(b)(3). The common questions of fact and law identified above predominate over any questions affecting only individual Class Members, including whether the Defendants violated and continue to violate the Equal Protection and Due Process rights of the Class, and what relief that the Plaintiffs and the Class Members seek.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. First, the Class Members do not have an interest in individually controlling the prosecution of separate actions, because their individual damages are unlikely to be large enough to warrant pursuing individual litigation in court or to obtain counsel to pursue an individual action, and because the cost of litigating the action will far exceed any potential benefit for individual Class Members. The prosecution of separate actions by individual Class Members would also impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the proposed Classes, including the key legal question of whether the Defendants are violating the Equal Protection and Due Process rights of the Class.

45. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure the uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. In addition, to

date there has not been any litigation by the Class Members regarding the practice challenged in this action. Finally, there will be no difficulties in managing this case as a class action.

**Rule 23(b)(2) certification is appropriate.**

46.     Class certification is appropriate for the proposed Class under Rule 23(b)(2), because the Defendants have acted or refused to act on grounds generally applicable to the Class, making declaratory and injunctive relief appropriate with respect to the Plaintiff and the Class. The Plaintiff and Class seek a declaration that the Defendants are violating their Equal Protection and Due Process rights and seek an injunction to prohibit the Defendants from continuing to violate the United States Constitution in the future.

**Rule 23(b)(1) certification is appropriate.**

47.     Class certification is appropriate for the proposed Class under Rule 23(b)(1), because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the proposed Class.

## CLAIMS FOR RELIEF

### COUNT I
**(Deprivation of Equal Protection, in Violation of U.S. Const. Amends. V)**

48.     Plaintiff realleges paragraphs 1 through 47 as if fully stated herein.

49.     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Supreme Court has ruled that similar equal protection principles apply to the federal government through the Fifth Amendment's Due Process Clause. U.S. Const. amend. V. *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

50. LGBTQ+ individuals and same-sex married couples are entitled to equal protection under federal law. *Obergefell v. Hodges*, 576 U.S. 644 (2015); *United States v. Windsor*, 570 U.S. 744 (2013); *Romer v. Evans*, 517 U.S. 620 (1996).

51. Review of classification based on sex and sexual orientation demands heightened scrutiny. *See United States v. Virginia*, 518 U.S. 515, 555 (1996) (holding that sex-based classifications warrant heightened scrutiny under the Equal Protection Clause).

52. To deny a benefit to a person because of their sexual orientation or because they are in a relationship with a person of the same sex constitutes discrimination on the basis of sex. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) (holding, in the Title VII context, that discrimination against gay individuals because of their sexual orientation necessarily constitutes discrimination on the basis of sex).

53. Based on the eligibility requirements of the 2021 and 2022 Appropriations Acts and VHA Directive 1334, infertile veterans in same-sex marriages are barred from IVF medical care through VA, whereas infertile veterans in opposite-sex marriages qualify for IVF medical care through VA. These eligibility requirements for IVF services discriminate against veterans on the basis of sex and sexual orientation.

54. The 2021 and 2022 Appropriations Acts and VHA Directive 1334's exclusion of IVF medical care to veterans in same-sex marriages cannot survive review under any level of constitutional scrutiny because the denial of IVF to same-sex couples has no rational relation to a legitimate governmental interest.

55. The 2021 and 2022 Appropriations Acts and VHA Directive 1334's exclusion of IVF medical care to veterans in same-sex marriages cannot survive review under heightened scrutiny because this exclusion does not further the advancement of an important governmental interest.

56.     The discriminatory policies enforced by Defendants forced Ms. Sheffield and similarly situated veterans to endure a starkly different fertility experience than veterans in opposite-sex marriages.

57.     Plaintiff is entitled to a declaratory judgment that the 2021 and 2022 Appropriations Acts and VHA Directive 1334's exclusion of IVF medical care to veterans in same-sex marriages violates the equal protection guarantees of Fifth Amendment of the United States Constitution.

## COUNT II
### (Discrimination Based on Sex and Sexual Orientation and Deprivation of Due Process by Defendant VA, in Violation of U.S. Const. Amend. V)

58.     Plaintiff realleges paragraphs 1 through 57 as if fully stated herein.

59.     The Fifth Amendment to the United States Constitution provides that no individual shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

60.     The U.S. Constitution's due process protections protect LGBTQ+ individuals and same-sex married couples from discrimination by the federal government on the basis of their sexual orientation. *Obergefell v. Hodges*, 576 U.S. 644 (2015); *United States v. Windsor*, 570 U.S. 744 (2013).

61.     Based on the eligibility requirement of 2021 and 2022 Appropriations Acts and VHA Directive 1334, infertile veterans in same-sex marriages are left without the ability meet VA's eligibility requirements for IVF medical care.

62.     The 2021 and 2022 Appropriations Acts and VHA Directive 1334's eligibility requirements for IVF discriminate against veterans on the basis of sex and sexual orientation.

63.     The 2021 and 2022 Appropriations Acts and VHA Directive 1334 bar same-sex married couples from receiving the same IVF services available to opposite-sex married couples, and thus constitute unconstitutional discrimination under the due process guarantees of the Fifth Amendment.

64.     Plaintiff is entitled to a declaratory judgment that the 2021 and 2022 Appropriations Acts and VHA Directive 1334's exclusion of IVF medical care to veterans in same-sex marriages violates the Due Process Clause of the Fifth to the United States Constitution.

### COUNT III
**(Discrimination Based on Sex and Sexual Orientation in Violation of 42 U.S.C. § 18116(a))**

65.     Plaintiff realleges paragraphs 1 through 64 as if fully stated herein.

66.     Section 18116(a) of Title 42 prohibits Defendants from discriminating against veterans on the basis of sex. Under 42 U.S.C. § 18116(a), "an individual shall not, on a ground prohibited under . . . title IX of the Education Amendments of 1972 . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . or under any program or activity that is administered by an Executive Agency[.]"

67.     Title IX of the Education Amendments of 1972, in turn, says that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," with some exceptions not applicable to this matter. 20 U.S.C. § 1681(a).

68.     Accordingly, Section 18116(a) of Title 42 prohibits discrimination based on sex in any health program or activity that is administered by an Executive Agency, like VA.

69.     To deny a benefit to a person because of their sexual orientation or because they are in a relationship with a person of the same sex constitutes discrimination on the basis of sex. *See Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020).

70.     The VHA is a health program or activity administered by an executive agency.

71. The VHA has discriminated against Ms. Sheffield and the Class Members on the basis of sex and sexual orientation by denying them IVF services and reimbursement because they are in same-sex marriages.

72. Violations of 42 U.S.C. § 18116(a) are remediable under the statute by the same enforcement mechanisms available under title VI of the Civil Rights Act of 1964, title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, and the Age Discrimination Act of 1975, which include compensatory damages.

73. Ms. Sheffield has incurred at least $30,000 in medical costs for infertility services that would have otherwise been covered by Defendant VA.

74. Plaintiff seeks compensatory damages from Defendants pursuant to 42 U.S.C. § 18116(a) for her financial and emotional losses.

## COUNT IV
**(Discrimination on the Basis of Sex and Sexual Orientation and Deprivation of Equal Protection by Officers of VA – Defendant Correa, in Violation of U.S. Const. Amend. V)**

75. Plaintiff realleges paragraphs 1 through 74 as if fully stated herein.

76. Defendant Correa was Acting Chief of Staff in July 2022, and he acted under the authority of VA when he denied Ms. Sheffield IVF services.

77. Defendant Correa's actions as an officer of VA in denying IVF services to Ms. Sheffield constitute discrimination on the basis of sex and sexual orientation and deprived Ms. Sheffield of equal protection and due process under the United States Constitution.

78. Violation of a constitutional right by a federal agent acting under color of their authority gives rise to a cause of action against that agent for damages resulting from such unconstitutional conduct. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

79. Defendant Correa violated the Fifth Amendment Due Process and Equal Protection rights of Ms. Sheffield by denying her and her spouse IVF services on the basis of their sexual orientation and sex.

80. Defendant Correa's denial of IVF to Ms. Sheffield has caused her to sustain substantial damages, including incurred out of pocket medical costs for IVF, enduring emotional distress, and attorneys' fees and cost.

## DEMAND FOR TRIAL BY JURY

81. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendants to provide all veterans equal access to IVF regardless of their sexual orientation or whether they are in same-sex marriages;

(2) Certify the proposed class, designate Plaintiff as the Class Representative, and designate Plaintiffs' counsel as Class Counsel;

(3) Declare that Defendants' actions have violated the Constitution;

(4) Declare that Defendants' actions have violated 42 U.S.C. § 18116(a);

(5) Enter a permanent injunction requiring Defendants to:

   a. Cease their policies of denying access to IVF to veterans in same-sex marriages;

   b. Cease enforcing the eligibility requirement b. in the VHA Directive 1334, which currently requires that the veteran and spouse are in a cisgender opposite-sex marriage or legally married with opposite-sex gametes/reproductive organs; and

    c. Cease application of Section 234's exclusion of cisgender same-sex married couples from eligibility for IVF services.

(6) Issue a permanent injunction striking down and permanently enjoining the provisions of the 2021 and 2022 Appropriations Act and VHA Directive 1334 that restrict IVF services to cisgender opposite-sex couples and other legally married couples with opposite-sex gametes or reproductive organs;

(7) Issue a permanent injunction requiring Defendants to implement procedures consistent with the Constitution and statutory authorities to protect the rights of veterans married to spouses with same-sex gametes/reproductive organs'

(8) Order that VHA's denial of Ms. Sheffield's and Class Members' requests for IVF services or for preapproval for IVF services was unlawful and should be set aside;

(9) Award Plaintiff and Class Members a judgment of compensatory damages for medical expenses and emotional distress resulting from Defendants' discriminatory and unconstitutional conduct;

(10) Award Plaintiff a judgment of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 28 U.S.C. § 2412 and any other applicable law; and

(11) Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Plaintiff Ashley Sheffield, on behalf of herself and others similarly situated,

By her attorneys,

BRODY HARDOON PERKINS & KESTEN, LLP,


/s/ Michael Stefanilo, Jr.
Michael Stefanilo, Jr., BBO# 684500
Monica Towle, BBO# 712109
Brody Hardoon, Perkins, & Kesten, LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
mstefanilo@bhpklaw.com
mtowle@bhpklaw.com

RENÉE A. BURBANK (D.D.C. Bar No. 90004342) *application for admission pro hac vice forthcoming*
RYAN KELLEY (D.D.C. Bar No. 1018452) *application for admission pro hac vice forthcoming*
National Veterans Legal Services Program
1100 Wilson Blvd., Suite 900
Arlington, VA 22209
Renee.Burbank@nvlsp.org
ryan.kelley@nvlsp.org

Peter Romer-Friedman (*pro hac vice forthcoming*)
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(202) 355-6364
peter@prf-law.com

Dated:  August 2, 2023
Boston, MA

20